KAREN A. OVERSTREET
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Rm. 6301
Seattle, WA 98101-1271
(206) 370-5330

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re                                        )
                                             ) Chapter 7
PRO AIR, INC.,                               )
                                             ) Bankruptcy No. 00-09271
                                             )
            Debtor.                          )
                                             ) **MEMORANDUM DECISION**
                                             )
_____) **NOT FOR PUBLICATION**

This matter came before the Court on October 5, 2007, on the motion filed by Wembly, Ltd. and International Technology Investment Group, Ltd. (collectively "Movants") requesting the following relief: (1) that the Court enter an order allowing Movants an administrative expense claim in the amount of $1,259,693.67; (2) that the Court require International Union, UAW ("UAW") to disgorge $1,137,500 in payments it received from the Chapter 7 trustee in this case on its Section 364(c)(1)[1] superpriority claim; and (3) that the Court order the payment of Movants' allowed administrative expense claim from the funds disgorged by UAW. UAW and Robert D. Steinberg, the Chapter 7

---

[1] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure Rules 1001 *et seq.*, in effect as of the petition date of September 18, 2000.

Memorandum Decision - 1

trustee (the "Trustee"), objected to the relief requested by Movants. The Court heard oral argument on October 5, 2007 and took the matter under advisement. For the reasons that follow, the Court will deny Movants' request that UAW be ordered to disgorge postpetition payments on account of its superpriority claim.

## I. BACKGROUND

The facts pertinent to the motion are not disputed. On September 18, 2000, Pro Air, Inc. ("Pro Air" or the "Debtor") filed a Chapter 11 petition. Pursuant to various cash collateral orders, Pro Air was authorized by the Court to use the cash collateral of its major secured creditors, General Motors Corporation and DaimlerChrysler Corporation (collectively, "Secured Lenders"). Second Declaration of Christopher M. Alston In Support of Motion for Order ("2nd Alston Decl."), Exs. A, B, C. Under the terms of the orders, the Secured Lenders were granted postpetition liens against Pro Air's assets of the same type covered by their prepetition liens and priority under Bankruptcy Code §507(b) should their postpetition liens fail to adequately protect them from a loss resulting from Pro Air's use of their cash collateral. The orders granting this protection specifically provided, however, that the Section 507(b) claim of the Secured Lenders would be subordinate to Chapter 7 administrative expenses in the event the case was converted to Chapter 7. *Id.*

In addition, an interim order signed by the Court on

Memorandum Decision - 2

November 13, 2000 authorized Pro Air to borrow up to $1,050,000 from UAW pursuant to the terms of a financing agreement. Declaration of Christopher M. Alston In Support of Motion for Order ("Alston Decl."), Ex. E. The interim order provided that UAW's claim for repayment of the funds would have priority under 364(c)(1) "and/or" 507(b) "over any and all administrative expenses of the kind specified in §503(b) or §507(b)," but would be of equal priority to the claims of the Secured Lenders under Section 507(b). *Id.* The funds were to be used to pay Pro Air's ordinary operating expenses pursuant to a court-approved budget. A final hearing on the UAW financing was held on December 1, 2000, at which time an order was entered approving the terms of the interim order without change. *Id.*

Pro Air was unable to confirm a Chapter 11 plan and on September 28, 2001, the case was converted to Chapter 7 and the Trustee was appointed. The Trustee, the Secured Lenders and UAW entered into a stipulation dated March 22, 2002 (the "Post-Conversion Stipulation"), which permitted the Trustee to use cash collateral that was in Pro Air's bank accounts on the conversion date and proceeds of unencumbered assets to fund the liquidation of Pro Air's estate. Alston Decl., Ex. G. The Secured Lenders specifically agreed that their collateral could be surcharged pursuant to Section 506(c) for the costs associated with the liquidation of their collateral. Pursuant to Section 11 of the Post-Conversion Stipulation, UAW agreed to subordinate its superpriority claim to the Trustee's liquidation expenses:

Memorandum Decision - 3

> The UAW recognizes that in order for the Trustee to pursue avoidance actions under Section [Chapter] 5 of the Bankruptcy Code (in which Lender does not have a security interest), the Trustee must be assured that the fees and costs of the Trustee and his professionals are paid. Therefore, UAW expressly agrees that the administrative expenses (fees and costs) of the Trustee and his professionals in pursuing avoidance actions are granted priority over the superpriority granted to UAW in the DIP Financing Order, subject to the notice requirements of section 8 above.

Alston Decl., Ex. G, ¶11. Section 14 of the Post-Conversion Stipulation acknowledged that Pro Air was administratively insolvent and that there was an estimated amount of $3,754,266.28 in unpaid Chapter 11 administrative claims.

After the Post-Conversion Stipulation was approved on April 16, 2002 (*see* Alston Decl., Ex. G), the Trustee commenced collection of Pro Air's Chapter 5 causes of action, including preference and fraudulent conveyance actions. Multiple orders were subsequently entered pursuant to which the Court permitted payments to the Secured Lenders of proceeds of their collateral and payment to UAW of proceeds of collections from Chapter 5 causes of action, net of the Trustee's expenses related to the proceeds. *See* Alston Decl., Ex. I. Pursuant to the orders, UAW was repaid $1,137,500 of the amount of its postpetition loan, which amount paid the principal loan in full plus some, but not all, of the postpetition interest due on the loan.

On October 4, 2002, Movants filed a complaint for declaratory judgment against the Trustee and Shire Equipment Leasing Corp. ("Shire") seeking declaratory relief that Movants

Memorandum Decision - 4

were the owners of a stock certificate evidencing 1.1 million shares of Gundle/SLT Environmental Inc. (the "Gundle Shares"). The Trustee answered the complaint asserting his right to the Gundle Shares pursuant to contracts between Pro Air and Movants. Shire also answered the complaint and filed a counterclaim against the Trustee as well as cross claims against Movants. *See* Adversary Case no. 02-01571. Subsequently, the adversary proceeding was transferred to the U.S. District Court for trial.

In 2003, the Trustee filed a motion for approval of a settlement agreement with Movants pursuant to which Movants would pay the estate $50,000 in exchange for the Trustee's relinquishment of any interest in the Gundle Shares. Shire objected and made the Trustee a counteroffer. Subsequently, the Trustee withdrew his offer to settle with Movants and sought authority instead to enter into a settlement with Shire. On August 22, 2003, the Court approved the settlement between Shire and the Trustee (*see* Docket No. 1037), pursuant to which Shire paid the Trustee $50,000 to acquire the estate's rights against Movants and to the Gundle Shares. Shire also agreed to pay all of the expenses of the litigation pending in the district court and to pay the Pro Air estate an agreed portion of any recovery in that action. Believing the estate had no obligation to participate directly in the litigation, the Trustee employed Shire's counsel as special counsel in the litigation to monitor the action for the estate. Alston Decl., Ex. O.

The litigation between Movants and Shire proceeded in

Memorandum Decision - 5

district court and, after a trial, the district court ruled in favor of Movants and against Shire on all of its counterclaims. On December 16, 2004, the district court entered a judgment in favor of Movants declaring them the owners of the Gundle Shares, which by that time had been converted into cash in the amount of $20,350,000 as a result of a merger (the "Merger Consideration"). Alston Decl, Ex. Q. Shire and the Trustee appealed the judgment and sought a stay pending appeal. The district court granted the stay so long as Shire and the Trustee established an escrow account into which the Merger Consideration was to be deposited to protect the funds pending the appeal. Alston Decl., Ex. R. In the order, the district court noted that interest accruing on the escrow account should be sufficient to cover any postjudgment interest Shire and the Trustee might ultimately owe and ordered the Trustee to surrender the Merger Consideration to the escrow agent. The Shire and the Trustee were to submit to the court proof that the conditions of the stay, *i.e.* the escrow requirements, had been met within 60 days of the date of the April 20, 2005 order. *Id*. The parties could not agree on the terms of the escrow, however, so none of them took any action with regard to the escrow account or the Merger Consideration. Two years later, the Ninth Circuit Court of appeals affirmed the district court in an opinion issued on March 1, 2007. Alston Decl., Ex. T.

In May of 2007, Movants sought to enforce their judgment to recover the Merger Consideration plus postjudgment interest and

Memorandum Decision - 6

damages.  On May 2, 2007, the district court issued on Order Granting Motion to Enforce Judgment pursuant to which the court granted Movants' request for postjudgment interest at the rate of 2.6% until the Merger Consideration was delivered to Movants. Shire and the Trustee contended that Movants had waived their right to postjudgment interest by refusing to sign an indemnity provision required by the proposed escrow agent thereby preventing establishment of the escrow account.  The district judge held that Movants had not waived their right to postjudgment interest, but had waived only their right to security for the interest.  Alston Decl., Ex. X.  The court ordered Shire and the Trustee to pay interest at 2.6% from the date of the judgment, finding that had they turned over the Merger Consideration to Movants years earlier, they could have stopped the accrual of postpetition interest.

Movants then requested the district court to enter separate judgments against Shire and the Trustee for postjudgment interest.  The Trustee argued that he had no involvement in the litigation, including the decision to appeal, but only a right pursuant to the settlement agreement with Shire to payment in the event Shire was successful in the litigation.  Alston Decl., Ex. Y.  On June 11, 2007, the district court granted Movants' motion for the entry of a separate judgment against the Trustee, finding that Movants, who were not parties to the settlement agreement between the Trustee and Shire, had not released their claims against the Trustee and that the Trustee never sought to

Memorandum Decision - 7

be dismissed from the litigation or disavowed the appeal that was brought in the names of both Shire and the Trustee. The district court entered a judgment against the Trustee in the amount of $1,259,693.67, plus postjudgment interest on that amount pursuant to 28 U.S.C. § 1961.

Neither the Trustee nor UAW disputes the amount or priority of Movants' asserted administrative claim for $1,259,693.67. They argue that UAW should not be ordered to disgorge the postpetition payments it received in the amount of $1,037,500 so that Movants can be paid. There are no other funds available in the estate to pay Movants.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III. ISSUES

Movants request the Court to resolve the following issues:

1. Whether Movants' Chapter 7 administrative expense claim has priority as a matter of law pursuant to Section 726(b) over UAW's superpriority claim under Section 364(c)(1) and Section 507(b); and

2. Whether UAW should be required to disgorge postpetition payments made on its superpriority claim so that those funds can be applied to Movants' claim.

## IV. DISCUSSION

Neither the Trustee nor UAW dispute that Movants are

Memorandum Decision - 8

entitled to the allowance of an administrative expense claim in the amount of $1,259,693.67 pursuant to Section 503(b). Consequently, the Court has not considered the authorities cited by Movants in support of their claim, including *In re Megafoods Stores, Inc.*, 163 F.3d 1063 (9th Cir. 1998). *See also Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755 (9th Cir. 1997). Additionally, UAW argues that the Court need not address the first issue above regarding the competition between Section 726(b) and Section 364(c)(1), but instead may decide the matter solely by looking at the disgorgement issue.

**A. Disgorgement.**

Assuming for the sake of this analysis that Section 726(b) gives priority to Movants' Chapter 7 administrative claim over UAW's Chapter 11 Section 364(c)(1) claim, the question is whether UAW is required to disgorge the payments it received on its Section 364(c) claim so that Movants' Section 507(b) claim can be paid. Although Section 726 establishes priorities for payment of claims in Chapter 7 cases, it does not provide for disgorgement if distributions are made in violation of the priority scheme set forth in that statute. The parties agree that there is no statutory authority for disgorgement other than Section 105, which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

The Ninth Circuit Court of Appeals has affirmed that although a bankruptcy court has the equitable power to issue any

Memorandum Decision - 9

order that is necessary or appropriate to carry out the provisions of the Code, a court may exercise its equitable power only as a means to fulfill some specific Code provision. *See, e.g., In re Saxman*, 325 F.3d 1168, 1174-75 (9th Cir. 2003)(bankruptcy court is authorized to use Section 105 to partially discharge a student loan obligation consistent with the provisions of Section 523(a)(8)); *See also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S. Ct. 963, 99 L. Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy court must and can only be exercised within the confines of the Bankruptcy Code."). Although some courts have ruled that disgorgement is mandatory if distributions have been made in contravention of Section 726's priority scheme, *see, e.g., Specker Motor Sales Co. V. Eisen*, 393 F.3d 659 (6th Cir. 2004)(court ordered professional fee disgorged to achieve *pro rata* distribution), the permissive language of Section 105 confirms what the majority of courts have held: that disgorgement is an equitable remedy that is within the discretion of the court. *See, e.g., In re Anolik*, 207 B.R. 34, 39 (Bankr. D. Mass 1997)("Disgorgement is a harsh remedy, one that should be applied only when mandated by the equities of a case.").

There are numerous reported cases addressing the circumstances under which courts have found it equitable to require disgorgement. From these cases, three trends have emerged. First, courts have determined that disgorgement is not mandatory solely because of administrative insolvency. *See,*

Memorandum Decision - 10

*e.g., In re Kids Creek Partners, L.P.*, 220 B.R. 963, 978 (Bankr. N.D. Ill. 1998)(court denies disgorgement request where payments were made pursuant to court-approved settlement agreement), *aff'd* 200 F.3d 1070 (7th Cir. 2000); *Anolik*, 207 B.R. at 39 ("This Court does not believe that Congress intended disgorgement of professional's fees due only to administrative insolvency."). Second, Courts seem more willing to require disgorgement from professionals who have received postpetition payments because of the additional discretion and flexibility courts have under Section 330 to approve fees. *See, e.g., Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2004); *In re Kearing*, 170 B.R. 1 (Bankr. D. D.C. 1994)(court recognizes power to order Chapter 11 professionals to disgorge interim compensation where Chapter 7 estate is administratively insolvent).[2] Finally, no court has required disgorgement from a third party who received payment in the ordinary course of the debtor's business. *See, e.g., In re Florida West Gateway, Inc.*, 166 B.R. 981, 982-83 (Bankr. S.D. Fla. 1994) (Requiring vendors, suppliers, etc. to disgorge payments made during Chapter 11 "would virtually eliminate the ability of any Chapter 11 Debtor to operate."); *In re Western Farmers Association*, 13 B.R. 132 (Bankr. W.D. Wash. 1981); *In re Manwell,* 62 B.R. 533 (Bankr. N.D. Ind. 1986); *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255 (Bankr. N.D. Ohio 1989).

---

[2] At least one court has refused to require disgorgement from estate professionals when their fees were paid pursuant to a final fee order as opposed to an interim fee order. *See In re St. Joseph Cleaners, Inc.*, 346 B.R. 430 (Bankr. W.D. Mich. 2006).

Memorandum Decision - 11

There is no reported case in which a third-party, postpetition lender like UAW was required to disgorge payments received on its postpetition court-approved loan. Movants rely on *In re Kingston Turf Farms, Inc.*, 176 B.R. 308 (Bankr. D. R.I. 1995), for the proposition that disgorgement may be required from a nonprofessional. In *Kingston*, the court ordered disgorgement of $3,112 from a Chapter 11 vendor who was paid its administrative expense claim after persistent demands while other administrative expense creditors went unpaid. The court made the sweeping conclusion that "*any* payment received in such circumstances [where there is concern about an administrative cash shortfall] is a payment 'on account,' and is subject to review." *Id.* at 310. The court's opinion, however, was thin on legal analysis and was based on the court's view that disgorgement is required "as a matter of law, just to adhere to the mandatory payment scheme of the Code.... [*i.e.,* §726(b)]." *Id.*

In two cases cited by UAW, the courts refused to order disgorgement from third-party nonprofessionals. The circuit court in *In re Kids Creek Partners, L.P.*, 200 F.3d 1070 (7th Cir. 2000), refused to deny the priority of a claim afforded to a secured creditor in the context of a court-approved settlement. The case did not involve conversion from Chapter 11 to Chapter 7, however, and the court did not mention disgorgement or Section 364(c)(1). Instead, the court concluded that "[o]nce an interim trustee has (with judicial approval) made a bargain on behalf of an estate in bankruptcy, then the estate is bound."

Memorandum Decision - 12

*Kids Creek*, 200 F.3d at 1073.[3] Similarly, in *Shop N' Go Partnership v. U.S.*, the court refused to order disgorgement of payments made to the Internal Revenue Service pursuant to a court-approved settlement in the Chapter 11 proceeding before conversion of the case to Chapter 7. 261 B.R. 810 (Bankr. M.D. Pa. 2001). The court rejected the trustee's argument that the payment should be disgorged because it violated the priorities established by the Bankruptcy Code, noting that because the payment was authorized by a final court order, the trustee could not recover the payment under the statutory authority provided in Section 549(a)(2)(B). Analyzing its equitable powers under Section 105, the court concluded that:

> In the absence of an application of Rule 60(b), policy considerations weigh heavily in favor of honoring the settlement agreement. Expectation of the parties that entered into the settlement agreement should be upheld. If not, neither the IRS nor the DIP would have entered into the agreement and there would exist a chilling effect on all future settlement agreements.

*Id.* at 817.

Based upon the discretionary language in Section 105, this Court concludes that disgorgement is not mandatory, and further, that it would be inequitable under the facts of this case to require disgorgement from UAW. UAW advanced significant funds to the debtor pursuant to a court-approved financing agreement at a

---

[3] The lower court in the *Kids Creek Partners* case, however, ordered special counsel to disgorge his interim fees so that a *pro rata* distribution could be made to all other administrative expense creditors. *In re Kids Creek Partners, L.P.*, 219 B.R. 1020 (Bankr. N.D. Ill. 1998).

Memorandum Decision - 13

time when the debtor was attempting to reorganize. The funds advanced were used to pay Chapter 11 operating expenses in the ordinary course of Pro Air's business. The financing agreement was initially approved nearly seven years ago and the last payment made to UAW was made nearly three years ago, pursuant to final court orders entered after notice to interested parties. There is no evidence to support Movants' contention that UAW financed the litigation with Movants nor did UAW have any input or decision-making authority regarding the litigation. Pursuant to the Trustee's settlement agreement with Shire, Shire had the sole authority to conduct the litigation. The fact that UAW, as Pro Air's largest unsecured creditor, would have received the largest share of any funds recovered from the litigation for the Pro Air estate does not make UAW liable for the adverse litigation result.

The equities of the case do not favor Movants. Although the district court held the Trustee and Shire responsible for the failure of the escrow arrangement and the claim for postjudgment interest, as between Movants and UAW, only Movants could have prevented their loss. UAW had no ability to alter the result or in any way force compliance with the district court order to escrow the Merger Consideration. There is no evidence, as suggested by Movants, that UAW was "monitoring" the litigation. Movants could have protected themselves by asking the district court for direction when the escrow arrangements could not be completed or by enforcing the judgment against the Trustee (the stay pending appeal never went into effect by the terms of the

Memorandum Decision - 14

district court order). Movants were well-aware that there were no significant assets in the Pro Air estate. The district court found that they waived their right to security for accruing interest on the Merger Consideration. UAW is not responsible for that waiver.

**B. Section 726.**

Because the Court finds that equity does not require disgorgement from UAW, it is not necessary to address the question of whether priority under Section 364(c)(1) trumps the scheme of distribution under Section 726(b).

**C. Trustee's Negligence.**

UAW makes the argument in its response to Movants' motion that Movants' loss should be assessed against the Trustee because of the Trustee's alleged negligence in failing to effect the terms of the escrow ordered by the district court. This claim is moot given the Court's ruling herein, and in any case, could not be addressed outside the context of an adversary proceeding. *See* Bankruptcy Rule 7001.

**CONCLUSION**

For the foregoing reasons, the Court will enter an order granting Movant's request for allowance of an administrative expense claim and denying Movants' request that UAW disgorge funds paid to it by the Trustee.

DATED this 24th day of October, 2007.

_____
KAREN A. OVERSTREET
UNITED STATES BANKRUPTCY JUDGE

Memorandum Decision - 15